UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INDICTMENT  CR 16-340 PJS/BRT |
| ) | |
| Plaintiff, ) | 18 U.S.C. § 1349 |
| ) | |
| v. ) | |
| ) | |
| HUY NGOC NGUYEN, ) | |
| JEROME TARLVE DOE, and ) | |
| NAPOLEON TUTEX DEAH, ) | |
| ) | |
| Defendants. ) | |

THE UNITED STATES GRAND JURY CHARGES:

## INTRODUCTION

1. From at least in or about 2012 through in or about December 2015, Huy Ngoc Nguyen, a Doctor of Chiropractic, participated in a scheme with others to defraud automobile insurance companies by submitting claims and receiving reimbursements through his chiropractic clinics for chiropractic services that were either not medically necessary or not rendered at all. The services prescribed and purportedly provided by Nguyen were not determined by medical necessity and reasonableness and the unique characteristics of each patient and were instead designed to fraudulently maximize reimbursement from the patients' automobile insurance companies. To induce patients to attend the chiropractic treatment sessions ordered by Nguyen, Nguyen made illegal kickback payments to patient recruiters, known as "runners." The kickback payments typically ranged between $500 and $2,000 for each automobile accident patient that the runners brought to Nguyen's clinics. Nguyen would often withhold the kickback payments


SCANNED
DEC 20 2016
U.S. DISTRICT COURT MPLS

or a portion of the kickback payments until the patient referred by the runner had attended a minimum number of treatment sessions, which was a predetermined number of sessions that was set before Nguyen even examined the patient. The runners, in turn, often gave a portion of the kickback payments they had received from Nguyen to the patients to induce the patients to attend the chiropractic treatment sessions that Nguyen ordered. In some instances, Nguyen paid patients directly to induce them to attend the chiropractic treatment sessions he had ordered. In yet other instances, Nguyen billed automobile insurance companies for services that were not actually provided.

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

### Relevant Entities and Individuals

2.  Healthcare Chiropractic Clinic, Inc. ("Healthcare Chiropractic") was a chiropractic practice with locations in Minneapolis and Brooklyn Park, Minnesota.

3.  Defendant **HUY NGOC NGUYEN** was a doctor of chiropractic licensed to practice by the State of Minnesota, and was the owner and chief financial officer of Healthcare Chiropractic. **HUY NGOC NGUYEN** submitted and caused to be submitted to automobile insurance companies claims for chiropractic and rehabilitation services that were not medically necessary and were not provided and made and caused to be made illegal payments for the referral of patients to Healthcare Chiropractic.

4.  Defendant **JEROME TARLVE DOE**, was a runner employed by **HUY NGOC NGUYEN** and Healthcare Chiropractic. **JEROME TARLVE DOE** recruited automobile accident victims to show up for appointments at Healthcare Chiropractic,

received illegal payments for recruiting these patients, and made payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

5.  Defendant **NAPOLEON TUTEX DEAH**, was a runner employed by **HUY NGOC NGUYEN** and Healthcare Chiropractic. **NAPOLEON TUTEX DEAH** recruited automobile accident victims to show up for appointments at Healthcare Chiropractic, received illegal payments for recruiting these patients, and made payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

## Minnesota's "No-Fault" Automobile Insurance

6.  The Minnesota No-Fault Automobile Insurance Act (the "No-Fault Act"), mandated that every vehicle registered in the State of Minnesota be covered by "no-fault" automobile insurance. The No-Fault Act also required that automobile insurance carriers (each being an "Insurer," or collectively the "Insurers") issue policies that comply with various requirements, including providing minimum coverage of $20,000 in medical expense benefits and $20,000 in income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss benefits, to victims of automobile accidents. The No-Fault Act required that Insurers provide this coverage and pay these benefits regardless of which party is at fault for the automobile accident. Among the medical expense benefits that an Insurer was required to reimburse were chiropractic services.

7.  Insurers providing coverage under the No-Fault Act constituted a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

8. The No-Fault Act prohibited health care providers, including chiropractors, from initiating direct contact with any individual who suffered an injury as a result of an automobile accident, specifying that the prohibited direct contact included contact by any employee, agent, or third party acting on behalf of the health care provider, including individuals referred to as "cappers," "runners," or "steerers." Minnesota laws also expressly prohibited the employment of runners, cappers, or steerers (hereinafter, "runner" or "runners"), defining each such term to mean "a person who for a pecuniary gain directly procures or solicits prospective patients through telephonic, electronic, or written communication, or in-person contact, at the direction of, or in cooperation with, a health care provider when the person knows or has reason to know that the provider's purpose is to perform or obtain services or benefits under or relating to a contact of motor vehicle insurance." Minn. Stat. § 609.612, Subd. 1(c). Any claims for services rendered by a health care provider that resulted from the use of a runner "are noncompensable and unenforceable as a matter of law." *Id.* Subd. 2.

## The No-Fault Insurance Fraud Scheme

9. In order to take advantage of the provisions of the No-Fault Act that required reimbursement of chiropractic services, **HUY NGOC NGUYEN** focused Healthcare Chiropractic's business on automobile accident victims and structured it in a way that would maximize the number of automobile accident patients seen at the clinic and maximize the number of visits and treatments that each patient would receive.

10. To increase the patient volume at Healthcare Chiropractic, in violation of Minnesota State Law, **HUY NGOC NGUYEN** paid and caused to be paid illegal

4

kickbacks to runners, including to **JEROME TARLVE DOE** and **NAPOLEON TUTEX DEAH**, in exchange for the referral of automobile accident victims to Healthcare Chiropractic. **HUY NGOC NGUYEN** generally paid the runners, including **JEROME TARLVE DOE** and **NAPOLEON TUTEX DEAH**, a kickback of between $500 and $2,000 per patient referral.

11. To ensure that he and Healthcare Chiropractic would maximize profits when billing the services to the Insurers, **HUY NGOC NGUYEN** withheld kickback payments until after the referred patient had completed a minimum threshold number of chiropractic appointments at Healthcare Chiropractic, thus ensuring that **JEROME TARLVE DOE, NAPOLEON TUTEX DEAH,** and other runners would require the automobile accident patients that they referred to return for multiple visits.

12. To induce patients to go to Healthcare Chiropractic for services and to continue attending medically unnecessary sessions at Healthcare Chiropractic, **JEROME TARLVE DOE, NAPOLEON TUTEX DEAH,** and other runners paid cash kickbacks directly to the patients. On occasion, **HUY NGOC NGUYEN** paid patients directly to induce them to continue attending medically unnecessary sessions and receiving medically unnecessary services. In some instances, the runners would stage accidents and then refer vehicle occupants to Healthcare Chiropractic for treatments, which were subsequently billed to the automobile insurance companies.

13. In an effort to conceal the true nature of the illegal payments, **HUY NGOC NGUYEN** often obtained the funds to make the illegal payments by writing checks payable to "cash" for several thousand dollars. **HUY NGOC NGUYEN** often wrote multiple such

checks in a single week, which he falsely characterized as having been for "chiropractic supplies" or "office supplies." **HUY NGOC NGUYEN** also wrote checks to runners, which he falsely characterized as having been for "marketing" or "transportation" in an effort to conceal the illicit nature of the payments.

14. Regardless of the physical condition of each patient, **HUY NGOC NGUYEN** prescribed a similar, and often identical, protocol of treatment for each patient. The protocol was designed to maximize the number of visits that each patient would make to Healthcare Chiropractic, maximize the number of services provided at each visit, and, in turn, maximize reimbursement to **HUY NGOC NGUYEN** and Healthcare Chiropractic. **HUY NGOC NGUYEN** frequently prescribed this predetermined protocol without even first conducting an initial examination of the patient and without regard to the unique complaints, symptoms, medical histories, and needs of the patient. **HUY NGOC NGUYEN** also instructed the staff of Healthcare Chiropractic to falsify patient records to show a certain description, level, and location of pain regardless of what the patient had actually reported. **HUY NGOC NGUYEN** prescribed and performed these services for automobile accident patients without consideration of the medical necessity of these treatments.

15. **HUY NGOC NGUYEN** then submitted and caused to be submitted to the Insurers claims for these services that were not medically necessary and, in other instances, not provided. With each such claim submission to the various Insurers, **HUY NGOC NGUYEN** and Healthcare Chiropractic represented that the services for which reimbursement was being sought were provided and were medically necessary.

16. **HUY NGOC NGUYEN** also submitted and caused to be submitted to the Insurers claims for services that were provided as a result of kickback payments to **JEROME TARLVE DOE, NAPOLEON TUTEX DEAH,** and other runners and failed to disclose this material fact to the Insurers.

17. The Insurers paid to **HUY NGOC NGUYEN** and Healthcare Chiropractic millions of dollars during the time period from 2012 through 2015 as a result of these false and fraudulent claims submissions.

## COUNT 1
(Conspiracy to Commit Health Care Fraud)

18. The allegations set forth in paragraphs 1 through 18 of this Indictment are re-alleged as if fully set forth herein.

19. From at least in or about 2012 and continuing thereafter through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants,

**HUY NGOC NGUYEN,
JEROME TARLVE DOE, and
NAPOLEON TUTEX DEAH,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Sections 1349.

## COUNT 2
(Conspiracy to Commit Mail Fraud)

20. The allegations set forth in paragraphs 1 through 18 of this Indictment are re-alleged as if fully set forth herein.

21. From at least in or about 2012 and continuing thereafter through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants,

**HUY NGOC NGUYEN,
JEROME TARLVE DOE, and
NAPOLEON TUTEX DEAH,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, would and did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, private or commercial interstate carrier, and would and did take and receive therefrom, such matter and thing, and would and did cause to be delivered by mail according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, a matter or thing, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

22.     Counts 1 and 2 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

23.     Upon conviction of the offenses alleged in Counts 1-2 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 1 and 2, respectively.

24.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                              FOREPERSON